E-FILED
Friday, 07 July, 2006   01:34:37 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Robert Donohue and Joyce Donohue,<br><br>Defendants. | Case No. 2:06-mc-02020-MPM-DGB<br><br><br>In the Matter of Tax Indebtedness of Robert and Joyce Donohue. |

## OPPOSITION TO PETITION FOR JUDICIAL APPROVAL OF LEVY UPON PRINCIPAL RESIDENCE.

Robert Donohue and Joyce Donohue, by and through their counsel, Robert Alan Jones, hereby submit this opposition to the petition for an order approving Internal Revenue Service administrative levy upon the taxpayers' principal residence.

1. Mr. and Mrs. Donohue are the subject of assessment with respect to their personal form 1040 income taxes for years 1997 and 1998. The assessments, although apparently lawful, are incorrect because they failed to give the Donohues credit for the ordinary and necessary business expenses associated with his fertilizer sales business during those respective years.

2. Therefore, the liability as stated is not correct.

3. The requirements of any applicable IRS policy through the Internal Revenue Manual, Part I, Chapter 2, Section 1 (*See* Exhibit "A" attached*)*, <u>have not been followed,</u> in that the taxpayers were denied audit reconsideration of the tax period in question in the instant case, even though there has been no final US Tax Court decision, nor United States Federal Court decision, with respect to the alleged liability. (*See* Subsection 1.2.1.3.16 (09-20-1999).

1

4.  Further, the Donohues are an elderly couple (Mr. Donohue is 81 years of age, and Mrs. Donohues is 74 years of age) living on a minimal current income. They have not been afforded required collection alternative treatment to which they are entitled to by the Urbana, Illinois IRS Office.

5.  However, the Las Vegas IRS Appeals Office and office of Chief Counsel are currently affording the Donohues audit reconsideration for subsequent years 2000, 2001 and 2002, and an offer in compromise to be filed which covers all outstanding obligations from years 1997 through 2005.

6.  Therefore, the granting of the IRS Petition will be manifestly against substantial justice and effective tax administration. This is in this case in part because stripping the Donohues of all assets beginning with their personal residence will simply leave a substantially unpaid bill to the IRS, and a penniless couple with no means of supporting themselves.

Dated this 7th day of July, 2006.

Respectfully submitted,

*//ss// Robert Alan Jones*
Robert Alan Jones, esq.
Bar No. 9078589
R.A.J. Limited, P.C.
1061 E. Flamingo Road, Ste. 7
Las Vegas, NV 89119
Telephone:   702-791-3405

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 7th day of July 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to interested parties. And, I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Karen A, Smith
Trial Attorney United States Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, DC 20044


By:*/ss// Robert Alan Jones*

E-FILED
Friday, 07 July, 2006   01:34:52 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT "A"



**Part 1. Organization, Finance and Management**
**Chapter 2. Servicewide Policies and Authorities**
**Section 1. Policies of the Internal Revenue Service (Cont. 1)**

### 1.2.1 Policies of the Internal Revenue Service (Cont. 1)

- 1.2.1.2 Administration
- 1.2.1.3 Tax Return Processing
- 1.2.1.4 Examination

### 1.2.1.2
### Administration

**1.2.1.2.27 (Approved 11-18-1959)**
**P-1-110**

1. **Employee afforded hearing in property damage cases:** An employee of the Service may be held pecuniarily liable for loss of or damage to government-owned property which is the result of gross negligence. Such determinations will be made by the survey officer or the survey board. However, before such a recommendation is made, the employee will be given opportunity for a hearing, or, at the option of the employee, may submit a written statement of circumstances or explanation.

**1.2.1.2.28 (Approved 06-13-1994)**
**P-1-111**

1. **Luxury class vehicles excluded from motor vehicle fleet except for surveillance or undercover work:** Luxury class vehicles, including American or foreign sports cars, will not normally be part of a motor vehicle fleet. The Directors of Investigation or the Chief Inspector may allow such inclusion if the following criteria are met: the vehicle is required for and will be used only for surveillance or undercover work; the vehicle will be used with sufficient frequency to make its maintenance feasible; the estimated cost of maintaining the vehicle in a safe operating condition is less than the cost of renting a suitable vehicle; and it is unlikely that the criminal element will identify the vehicle's use for law enforcement purposes. The vehicle will be stored when not in use. The continued inclusion of the vehicle in the fleet will be subject to annual review.

**1.2.1.2.29 (Approved 09-25-1967)**
**P-1-113**

1. **Postage-paid envelopes furnished with third party inquiries:** Specially designed reply envelopes and labels preprinted with the notation "Business Reply Mail" stating that "POSTAGE WILL BE PAID BY THE INTERNAL REVENUE SERVICE" and pre-addressed to an IRS employee or office may be furnished in tax liability investigations when information is solicited from a third party not representing the taxpayer. Prepaid envelopes or labels may also be furnished to persons or concerns for their convenience in submitting information for official purposes such as administrative investigations, requesting information from an employee's references, or other similar situations.

2. **Pre-addressed envelopes requiring postage furnished when beneficial to Service:** Pre-addressed envelopes requiring postage may be furnished taxpayers for their convenience in mailing returns or for other official purposes when it has been administratively determined that the practice is beneficial to the Service in promoting a more expeditious and economical operation.

**1.2.1.2.30 (Approved 11-18-1959)**

2. **Period of extension:** In general, extensions of time will be for no more than 30 days. If the need for additional time is clearly shown, payers may request a second extension for no more than 30 days. Second requests will be granted based on the evidence that extenuating circumstances prevented filing by the first extension date.

### 1.2.1.3.12 (Approved 01-22-1965)
### P-2-66

1. **Extensions of time for furnishing Form W–2 to employees approved in bona fide cases:** Employers will be granted reasonable extensions of time for furnishing Form W–2 to employees. However, since employees will need this information to prepare their income tax returns, extensions of this type will be granted only when the request is based upon circumstances which could not reasonably have been foreseen and provided for in advance.

2. **Period of extension:** In general, extensions of time will be for no more than 15 days, unless need for an extension up to a total of thirty days is clearly shown.

### 1.2.1.3.13 (Approved 06-19-1987)
### P-2-67

1. **Late filed applications for extensions of time to file returns will not be approved:** The Service will neither consider nor approve on a case-by-case basis late filed applications for extensions of time to file returns. The Commissioner may extend the due date for filing returns for broad classes or groups of taxpayers, but only in cases of natural disaster, catastrophe or other extraordinary situations.

### 1.2.1.3.14 (Approved 03-24-1960)
### P-2-77

1. **Mailing of blank tax return forms to taxpayers:** As a service and convenience to taxpayers and to encourage voluntary compliance by reminding them of their obligation to file returns, the Service will, in general, mail blank tax return forms to persons who filed returns for the previous tax period or are otherwise on record as being potentially liable for the filing of returns.

2. **Blank forms also to be made available at post offices, banks, etc.:** As a further service, certain blank forms designed for general and widespread public usage will be made available at district offices, banks, post offices, etc., for over-the-counter distribution.

### 1.2.1.3.15 (Approved 10-21-1971)
### P-2-88

1. **Elections to apply income tax overpayments to estimated tax may be reversed upon showing of undue financial hardship:** When an income tax overpayment is elected for credit to estimated tax for the following year, it must be so applied. If the taxpayer wishes to change his/her election (after the filing of the overpayment return) in order to have the overpayment refunded, the refund may be made only upon a showing that the taxpayer would suffer undue financial hardship. Refunds in such cases will be limited to individual taxpayers whose requests are submitted far enough in advance to permit refund to be made prior to the end of the taxable year to which the credit was applied. Interest will not be allowed on the overpayment for the reason that the Service was precluded from making the refund within the usual 45-day interest-free period.

### 1.2.1.3.16 (09-20-1999)
### P-2-89



1. **Reconsideration of an Unpaid Assessment:** A request for reconsideration of an unpaid assessment will be considered if:

    a. The taxpayer requests in writing the abatement of an assessment based on enclosed information that was not previously considered which, if timely submitted, would have resulted in a change to the assessment;

    b. An original delinquent return is filed by the taxpayer after an assessment was made as a result of a return executed by the IRS under IRC § 6020(b) or other substitute for return procedure; or

    c. There was an IRS computational or processing error in assessing the tax.

2. A request for reconsideration of an unpaid assessment based on item 1 or 2 above will not be considered if:

    A. The assessment was made as a result of a closing agreement entered into under IRC § 7121, or as a result of a compromise under IRC § 7122;

    B. The assessment was made as a result of final adjustments of partnership items;

    C. The assessment was made as a result of the taxpayer entering into an agreement on Form 870-AD (*Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Over assessment*); or

    D. The assessment relates to a return closed on the basis of a final order of the United States Tax Court or other court.

### 1.2.1.4 (03-15-2000)
### Examination

1. The policy statements within the "P-4-X" series fall under the category of Examination.

### 1.2.1.4.1 (Approved 12-21-1984)
### P-4-3

1. **Cases closed by District Directors or Service Center Directors will not be reopened except under certain circumstances:** The Service will not reopen any case closed after examination by a district office or service center to make an adjustment unfavorable to the taxpayer unless: (1) there is evidence of fraud, malfeasance, collusion, concealment or misrepresentation of a material fact; (2) the prior closing involved a clearly defined substantial error based on an established Service position existing at the time of the previous examination; or (3) other circumstances exist which indicate failure to reopen would be a serious administrative omission.

2. **Certain contacts not considered as examinations or reopenings:** Contacts with a taxpayer to verify or adjust a discrepancy between the taxpayer's tax return and information returns, including late or amended returns, are not examinations or reopenings. For this purpose, information returns include returns and amended returns filed by partnerships, fiduciaries, and small business corporations.

3. A contact to verify a discrepancy disclosed by an information return matching program may include inspection of the taxpayer's books of account, to the extent necessary to resolve the discrepancy, without being considered an inspection within the meaning of section 7605(b) of the Code.

4. A contact with an investor to verify the accuracy of, or the need for, a Tax Shelter Registration number is not an examination within the meaning of Section 7605(b) of the Code. To the extent that the contact is to determine the need for a Tax Shelter Registration number, the information sought would be limited to obtaining the name and address of the promoter.

5. The adjustment of an unallowable item, or an adjustment resulting from other types of service center return correction programs, is not considered an examination. Therefore, a subsequent examination does not constitute a reopening of a case closed after examination.

6. **Authorization of reopenings**

7. All reopenings require prior approval by the Chief, Examination Division (District Director if there is no